The Honorable Grady P. Arrington State Representative Chairman, Legislative Joint Auditing Committee Division of Legislative Audit Room 172, State Capitol Little Rock, Arkansas 72201
Dear Representative Arrington:
This is in response to your request for an opinion on whether the state of Arkansas has a valid first lien on securities pledged by various state or federal banks to secure deposits of state funds. You have enclosed several documents, including a "Collateral Agreement" and a "Custodial Services Agreement", which are unexecuted, and which serve as form agreements to be executed by the various banks when state funds are deposited with them.
The"Collateral Agreement" contains a promise by the accepting bank to pledge 100% collateral on a certain certificate of deposit placed with the bank. That agreement also requires the bank to have a safekeeping receipt provided to the State Treasurer's Office by a third party custody bank, acknowledging the securities pledged to secure the funds. Acceptable collateral includes only those types of securities defined in A.C.A. 19-8-203. (Some of the acceptable Arkansas securities require 120% collateralization under the agreements.)
The "Custodial Services Agreement" provides for the accepting bank to select a "custodial bank" which will have possession of the securities used as collateral. It also requires the custodial bank to provide a safekeeping receipt to the State Treasurer's Office within ten days of the deposit, and further provides that the collateral shall not be co-pledged, assigned, or compromised without the instruction of the Treasurer.
In response to your specific question, (whether, under these agreements, the state has a first lien on the securities pledged as collateral), it should be noted that the question of whether the state has a first lien does not so much depend upon the written agreements, but what occurs under them. A written security agreement is not required in most instances to perfect a security interest in a security. A.C.A. 4-8-321 (3)(b). This is fortunate for the state, since neither of the agreements enclosed would qualify as "security agreements" because neither adequately describes the collateral, (see A.C.A. 4-9-110); rather, each one describes only what types of collateral will be accepted.[1] Thus, we must look to the actions of the parties to determine whether the state's interest is "perfected" so as to give the state a valid first lien.
The perfection of security interests in securities is governed by A.C.A. 4-8-321, which provides in pertinent part:
 (1) A security interest in a security is enforceable and can attach only if it is transferred to the secured party or a person designated by him pursuant to a provision of 4-8-313(1).
 (2) A security interest so transferred pursuant to agreement by a transferor who has rights in the security to a transferee who has given value is a perfected security interest. . . .
Section 4-8-313(1), noted above, provides many ways in which a security (or security interest in a security) may be transferred. That section provides in relevant part:
 (1) Transfer of a security or a limited interest (including a security interest) therein to a purchaser occurs only:
 (a) At the time he or a person designated by him acquires possession of a certificated security;
 (b) At the time the transfer, pledge, or release of an uncertificated security is registered to him or a person designated by him;
 (c) At the time his financial intermediary acquires possession of a certificated security specially indorsed [endorsed] to or issued in the name of the purchaser;
 (d) At the time a financial intermediary, not a clearing corporation, sends him confirmation of the purchase and also by book entry or otherwise identifies as belonging to the purchaser:
 (i) A specific certificated security in the financial intermediary's possession;
 (ii) A quantity of securities that constitute or are part of a fungible bulk of certificated securities in the financial intermediary's possession or of uncertificated securities registered in the name of the financial intermediary; or
 (iii) A quantity of securities that constitute or are part of a fungible bulk of securities shown on the account of the financial intermediary on the books of another financial intermediary.
We have not been provided with specific information with respect to the types of securities being pledged as collateral under these agreements, other than the fact that they must fall within A.C.A. 19-8-203. It is my assumption, however, that these securities are uncertificated, and possession will either originate at the custodian bank, or possession will be transferred to the custodian bank. That bank will then send a safekeeping receipt to the Treasurer. It is my opinion that this sequence of events will be sufficient to give the state a valid first lien, so long as the receipt is sent, and so long as the custodian bank makes a book entry or otherwise notes the state's interest in the securities.
This scenario is consistent with A.C.A. 4-8-313(1)(d)(iii), under which an interest is created in securities shown on the account of one financial intermediary on the books of another financial intermediary. It is of course possible that transfer and perfection could have occurred under an additional provision of A.C.A. 4-8-313. We have, however, not been provided with any additional facts in this regard.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elana L. Cunningham.
 cc: The Honorable Jimmie Lou Fisher State Treasurer State Capitol — Room 220 Little Rock, AR 72201
[1] Of course, this is not to say that both agreements do not serve other important functions; they simply do not govern perfection in this instance.